**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| QUALITY LEASE AND RENTAL | § | |
| HOLDINGS, LLC, | § | |
|     Debtor. | § | **CIVIL ACTION NO. 6:16-0006** |
| | § | |
| ------------------------------------------------ | § | |
| | § | |
| GRETA YVETTE MOBLEY, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Bankruptcy Adversary No. 14-6005 |
| | § | |
| QUALITY LEASE AND RENTAL | § | |
| HOLDINGS, LLC, *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This fraud, tort, and breach of contract case is before the Court on the Motion

to Exclude E. Allen Jacobs ("Motion to Exclude") [Doc. # 35] filed by Greta Yvette

Mobley ("Yvette Mobley"), David Michael Mobley ("Michael Mobley"), QLS

HoldCo, Inc. ("HoldCo"), Texas Quality Mats, LLC ("TQ Mats"), and Texas Quality

Gate Guard Services, LLC ("TQ Gate") (collectively, the "Mobley Parties").[1] Quality

Lease and Rental Holdings, LLC ("QLRH"), Quality Lease Rental Service, LLC

---

[1]    Joining in the Motion to Exclude were Third Party Defendants David Russell Mobley, Cody Blane Mobley, Solid Liberty Services, LLC ("SLS"), Solid Liberty Rental Services, LLC ("SLRS") and QCE Supply, Inc. ("QCE") (collectively, the "Third Party Defendants"), who have now settled.

("QLRS"), Quality Lease Service, LLC ("QLS") (collectively, the "Quality Companies"), and Rocaceia, LLC ("Rocaceia") (collectively, "Debtors") filed an Opposition [Doc. # 39], and the Mobley Parties filed a Reply [Doc. # 46]. The Court has reviewed the record and the applicable legal authorities. Based on that review, the Court **grants** the Motion to Exclude only as to any new opinions offered for the first time in the Rebuttal Opinion, and **denies** the Motion to Exclude in all other respects.

## I.     BACKGROUND

In 1989, Michael Mobley and Yvette Mobley formed QLS, an oilfield services company. They later formed QLRS and QCE, related companies that provided services to the oil field industry. QLS leased or rented oil field equipment, while QLRS performed related services such as transporting the rig housing, cleaning the houses, and servicing the shower houses.

In December 2012, Michael Mobley and Yvette Mobley[2] sold QLS and QLRS to a newly-created company, QLRH, pursuant to the terms and conditions of a Purchase and Contribution Agreement ("Purchase Agreement"). First, they formed HoldCo for the sole purpose of completing the transaction. Then they used HoldCo to complete the sale of QLS and QLRS to QLRH. Rocaceia had formed QLRH to be

---

[2]     Michael Mobley and Yvette Mobley divorced in August 2012.

the entity that would purchase QLS and QLRS.  Rocaceia was owned by a group of investors led by Allan Martin.

Pursuant to the terms of the Purchase Agreement and through a series of transactions, Michael Mobley and Yvette Mobley transferred 80% of their interest in QLS and QLRS in exchange for approximately $40 million in cash and a $20 million promissory note.  Michael Mobley entered into an employment agreement with QLRH ("Employment Agreement") to serve as the President of QLRH.  Yvette Mobley and sons David Russell Mobley and Cody Blane Mobley were at-will employees of QLRH.  The Purchase Agreement contained certain covenants to prevent Michael Mobley and Yvette Mobley from competing with or interfering in the business of QLRH.[3]

QCE was not included in the Purchase Agreement.  Michael Mobley continued to operate QCE and other Mobley-controlled companies.

Soon after the sale of QLS and QLRS to QLRH was completed, Allan Martin complained that Michael Mobley was devoting his time and attention to QCE, and that he was using QCE to compete with QLRH.

---

[3]     The Purchase Agreement contained provisions prohibiting Michael and Yvette Mobley from soliciting employees, targeting customers, and engaging in the business of QLS and QLRS and, importantly, the newly formed QLRH.  The Purchase Agreement also prohibited Michael and Yvette Mobley from investing in, financing, assisting others, or having an interest in other companies that compete with QLRH.

On March 22, 2013, David Russell Mobley and Cody Blane Mobley formed SLS. On April 5, 2013, they resigned from their employment with QLRH. On April 6, 2013, Yvette Mobley was fired by QLRH and Michael Mobley was placed on administrative leave. On April 17, 2013, the Mobley sons, through SLS, purchased QCE from their parents for $3.6 million. On April 19, 2013, the Mobley sons formed SLRS which, together with SLS, performed services similar to those provided by QLRH.

Following the purchase of QLS and QLRS, net sales by QLRH fell $16 million from net sales by the composite companies the prior year, and QLRH's EBITDA[4] fell $12.1 million. QCE's total invoiced work, on the other hand, increased dramatically. Almost all of the increase in QCE's business was attributable to services that were offered by QLRH.

Debtors filed a Chapter 11 bankruptcy petition on October 1, 2014. On October 8, 2014, a lawsuit filed in Texas state court by some of the Mobley Parties was removed as this adversary proceeding. In connection with this adversary proceeding, Debtors filed a counterclaim against the Mobley Parties and designated E. Allen Jacobs as an expert witness on Debtors' alleged damages and on causation. Jacobs submitted an extensive Expert Report ("Original Report") dated July 25, 2018,

---

[4] EBITDA is earnings before interest, tax, depreciation and amortization.

attached as Exhibit B to the Response. On October 22, 2018, Jacobs submitted a Rebuttal Report, attached as Exhibit C to the Response.

While the Adversary Proceeding was pending before the Bankruptcy Court, the Mobley Parties and the Third Party Defendants moved to exclude Jacobs as an expert witness. By Order [Doc. # 328 in Adv. Case No. 14-6005] entered May 15, 2019, the Bankruptcy Court denied the motion to exclude. Although the Bankruptcy Court's ruling is not binding on this Court, it is well-reasoned and persuasive.

Following withdrawal of the reference to the Bankruptcy Court and reinstatement of the case on this Court's active docket, *see* Order [Doc. # 23], the Mobley Parties and Third Party Defendants filed their Renewed Motion to Exclude E. Allen Jacobs [Doc. # 35]. The Motion has been fully briefed. The Court has reviewed the record on the Motion to Exclude, and all pertinent documents. The Motion is now ripe for decision.

## II.  APPLICABLE LEGAL STANDARD

Witnesses who are qualified by "knowledge, skill, experience, training or education" may present opinion testimony to the jury. FED. R. EVID. 702; *see, e.g., Whole Woman's Health v. Hellerstedt*, __ U.S. __, 136 S. Ct. 2292, 2316 (2016); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) *(en banc)*; *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). To be admissible, an expert's proffered

testimony must be both relevant and reliable.  *See Daubert v. Merrell Dow Pharms.,*

*Inc.*, 509 U.S. 579, 591-92 (1993); *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822

F.3d 194, 199 (5th Cir. 2016).

The expert testimony must be relevant and the expert's proposed opinion must

be one that would assist the trier of fact to understand or decide a fact in issue.  *See*

*Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529

(5th Cir. 2015); *Bocanegra v. Vicar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)

(citing *Daubert*, 509 U.S. at 591-92).  "A party seeking to introduce expert testimony

must show (1) the testimony is based upon sufficient facts or data, (2) the testimony

is the product of reliable principles and methods, and (3) the witness has applied the

principles and methods reliably to the facts of the case."  *Huss*, 571 F.3d at 452 (citing

*Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007)); *see also*

*Carlson*, 822 F.3d at 199.

"Reliability" requires that the proponent of the expert testimony must present

some objective, independent validation of the expert's methodology.  *See Brown v.*

*Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013).  The objective of the Court's

gatekeeper role is to ensure that an expert "employs in the courtroom the same level

of intellectual rigor that characterizes the practice of an expert in the relevant field."

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

The Court's gatekeeper role is no substitute, however, for the adversarial process. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596; *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 852 (5th Cir. 2015).

## III.  ORIGINAL EXPERT OPINIONS

In his Original Report, Jacobs calculates alternative damages models, specifically a benefit of the bargain model, a rescissory damages model, and an out-of-pocket damages model.  The Mobley Parties argue that Jacobs's damages calculations are irrelevant, unreliable, and inadmissible.[5]  The Mobley Parties argue also that Jacobs's opinions regarding causation are unreliable.

The Court has carefully reviewed the full Original Report, as supplemented by the Rebuttal Report, and finds that Jacobs's opinions are admissible.  The transactions and the relationships among the parties in this case are complicated and somewhat

---

[5]      The Court notes that Jacobs's Original Report and Rebuttal Report will not be admitted as evidence at trial.  Jacobs's evidence will be presented through his testimony, either live at trial or previously recorded under oath.

confusing. A significant aspect of QLRH's purchase of QLS and QLRS was the expectation that Michael Mobley would provide his experience and services as President of QLRH. Further, Michael Mobley's agreement not to engage in activities that competed with or interfered with QLRH's business was an important part of the consideration for the sales transaction. Therefore, this case does not involve a simple, straightforward damages analysis, such as where a buyer entered into an agreement to purchase a Marc Chagall painting but received a forgery. Instead, the damages calculation in this case will necessarily be complicated and, perhaps, require an innovative approach. In sum, the Mobley Parties' criticisms of Jacobs's opinions go to the proper weight that should be given to those opinions, not to their admissibility.[6]

## A. **Benefit of the Bargain Damages**

Benefit of the bargain damages are calculated based on the difference between the value as represented by the seller and the value actually received by the buyer. *See Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018); *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 275 (5th Cir. 2012). "Both measures are determined at the time of the relevant transaction." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812,

---

[6]     The Mobley Parties properly do not challenge Jacobs's qualifications as an expert in damages and causation. This Court finds him well qualified to offer the opinions in the Original Report, as supplemented in the Rebuttal Report.

817 (Tex. 1997); *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 374 (Tex. App. –

Houston [14th Dist.] 2016, review denied).

The Mobley Parties argue that Jacobs failed to calculate the "value received"

as of the date of the transaction, used an unreliable annualized EBITDA, and used an

"unreliable" calculation of the value represented to Debtors.  It is true that Jacobs

calculated the "value received" based on dates other than the December 2012 date of

the sale of QLS and QLRS to QLRH.  Nonetheless, he then discounted his valuation

back to the date of the sale.  This discounting valuation back to the date of the sales

transaction is consistent with the Litigation Services Handbook, particularly for

circumstances where the value of the purchased company includes the value of the

seller's continued cooperation and support after the sale.  *See* Litigation Services

Handbook: The Role of the Financial Expert, 6th ed., pp. 4-16.

The Mobley Parties complain that Jacobs used an annualized EBITDA based

on a one month period rather than six months, and that his calculation of the "value

received" was based on QLRH's bank's representations of value, was based on

information that he had not independently verified, and relied on "irrelevant EBITDA

multiples."  These complaints can be addressed through cross-examination during

trial; they go to the weight of the evidence, and not to its admissibility.

The Mobley Parties identify several bases for rigorous cross-examination of Jacobs regarding his benefit of the bargain damages calculations. The Mobley Parties fail, however, to identify a legal or factual basis to exclude those opinions.

**B.**     **Out-of-Pocket Damages**

Out-of-pocket damages are calculated based on the difference between the value of what the buyer received in the transaction and the purchase price or other value given by the buyer. *See Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719, 728 (Tex. App. – Houston [1st Dist.] 2012, no pet.). The Mobley Parties argue that Jacobs failed to calculate correctly the "fair market value" of what was exchanged in the sales transaction. This argument goes to weight rather than admissibility. In his Original Report and in his Rebuttal Report, Jacobs explains fully the basis for his out-of-pocket damages calculation. The Mobley Parties' disagree with Jacobs's calculation, but they can challenge the calculation and present disagreement through cross-examination at trial.

**C.**     **Rescissory or Restitution Damages**

The Mobley Parties argue that Jacobs's opinion regarding rescissory or restitution damages should be excluded because only HoldCo sold QLS and QLRS to QLRH. In support of its argument, the Mobley Parties cite *City of The Colony v. N.*

*Tex. Mun. Water Dist.*, 272 S.W.3d 699, 737 (Tex. App. – Fort Worth 2008, pet. dism'd), which is a discussion of benefit of the bargain damages, not rescissory damages. The Mobley Parties also cite *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 335 S.W.2d 371, 373 (Tex. 1960), and *N. Nat. Gas Co. v. Chisos Joint Venture I*, 142 S.W.3d 447, 456 (Tex. App. – El Paso 2004, no pet.), but both of these cases discuss rescission, not rescissory damages.

"Rescissory damages" are monetary damages that are generally available when rescission is "appropriate, but not feasible." *ASARCO LLC v. Americas Mining Corp.*, 404 B.R. 150, 165 (S.D. Tex. 2009) (citing Delaware law); *Credit Suisse AG v. Claymore Holdings, LLC*, 2018 WL 947902, *12 (Tex. App. – Dallas, Feb. 20, 2018, review granted) (citing New York law). Given the complicated manner in which the sale in issue was structured, rescission, if appropriate, would not be feasible. Therefore, HoldCo's status as the direct seller of QLS and QLRS to QLRH does not render Jacobs's rescissory damages opinion inadmissible.

### D.     Causation Opinions

The Mobley Parties argue that Jacobs's causation opinions are inadmissible because Debtors have now filed an amended pleading[7] that eliminates many of their

---

[7]     Debtors' current pleading is the Sixth Amended Counterclaims and Third Party Claims [Doc. # 29].

causes of action, and because Jacobs failed to rule out alternative causes of Debtors'

damages.[8]   There remain causes of action against the Mobley Parties for which

Debtors seek to recover damages.  Therefore, the existence of an amended pleading

does not render Jacobs's causation opinions inadmissible.

As noted above, the Court has reviewed Jacobs's reports and finds that he fully

explains the bases for his opinions.  The Mobley Parties believe Jacobs should have

considered other factors that may have caused QLRH's damages, and should have

evaluated differently factors that he considered.  This is an argument that goes to the

proper weight to be given to Jacobs's opinions, not to their admissibility.  The Mobley

Parties will be able to cross-examine Jacobs fully on the factors he considered, those

he failed to consider, assumptions he made, and the manner in which he evaluated the

various factors that may (or may not) have caused Debtors' claimed damages in this

case.

## IV.    <u>REBUTTAL EXPERT OPINIONS</u>

Federal Rule of Civil Procedure 26(a)(2) governs disclosures of expert

testimony.  The initial disclosure of an expert witness must be accompanied by a

---

[8]    In the Motion to Exclude, Movants argue also that Jacobs failed to support his causation opinions with respect to the Third Party Defendants. Debtors and the Third Party Defendants have now settled their dispute and, as a result, Jacobs will not be testifying at trial regarding any damages allegedly attributable to the Third Party Defendants.

report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). Expert testimony may be offered "solely to contradict or rebut evidence on the same subject matter" identified by another expert witness. FED. R. CIV. P. 26(a)(2)(D)(ii).

This Court allows an expert to provide a rebuttal opinion to respond to the opposing party's expert's report. The Court has carefully reviewed Jacobs's Rebuttal Report. Most of Jacobs's Rebuttal Report is true rebuttal – responding to the opposing expert's criticisms of, and providing additional explanation for, the opinions in his Original Report.

This Court does not, however, allow an expert in a rebuttal report to express opinions that have not previously been disclosed. The Mobley Parties argue that Jacobs included new opinions in his Rebuttal Report.

Jacobs made changes to his damages calculations to reflect additional prejudgment interest from the date of his Original Report to the date of the Rebuttal Report. These changes are not based on a new opinion but, instead, are new mathematical calculations based on the original opinions. The new calculations are allowed.

Jacobs admits that he changed his opinion regarding a benefit of the bargain damages model to extend the projected but-for EBITDA from 2014 in the Original

Report to 2015 in the Rebuttal Report.[9]  *See* Rebuttal Report, p. 5.  Additionally,

Jacobs offered new opinions regarding rescission damages and out-of-pocket damages

to include new elements – specifically amounts received in 2015 from an auction prior

to the final sale in bankruptcy, and additional debt and equity infusions made by Allen

Martin and Main Street Capital in 2013 and 2014.[10]  *See id.* at 5-6.  These are new

opinions to which the Mobley Parties' expert had no opportunity to respond.

Therefore, Jacobs will not be permitted to testify at trial regarding these new

opinions.[11]

## V.    CONCLUSION AND ORDER

The Mobley Parties' challenges to Jacobs's expert opinions go to the weight of

the expert opinions rather than to their admissibility.  In his Rebuttal Report, Jacobs

is allowed to expand upon his explanation for the opinions in his Original Report, and

he is allowed to update mathematical calculations based on his original opinions.

---

[9]    This change resulted in a reduction in Jacobs's calculated benefit of the bargain damages from $61.8 million in the Original Report to $32.3 million in the Rebuttal Report.  The Court expects Jacobs's testimony at trial regarding this changed calculation to be limited to the $32.3 million reflected in the Rebuttal Report.

[10]    These changes caused an increase to Jacobs's calculations of Debtors' rescissory damages and out-of-pocket damages.

[11]    These opinions are excluded unless the Court finds that the Mobley Parties' questioning or argument opens the door to testimony regarding the new opinions.

Jacobs is not permitted, however, to offer new opinions for the first time in his Rebuttal Report. Therefore, he will not be permitted to testify at trial regarding any new opinions. Based on the foregoing, it is hereby

**ORDERED** that the Motion to Exclude E. Allen Jacobs [Doc. # 35] is **GRANTED** as to the new opinions offered for the first time in the Rebuttal Report and **DENIED** in all other respects.

SIGNED at Houston, Texas, this **8th** day of **November, 2019**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE